

2024R00611/CAS/ALW/MJP/ER/MS

**FILED**

JUL - 7 2025

AT 8:30 _____ 12:46 M

CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Madeline Cox Arleo |
| | : | |
| v. | : | Crim. No. 25-436 |
| | : | |
| CESAR HUMBERTO PINA, | : | <u>Counts One and Two</u> |
| a/k/a "Flipping NJ" | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 2 |
| | : | |
| | : | <u>Count Three</u> |
| | : | 18 U.S.C. § 1956(h) |
| | : | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | : | |
| | : | <u>Counts Four and Five</u> |
| | : | 18 U.S.C. § 1956(a)(3)(B) |
| | : | 18 U.S.C. § 2 |
| | : | |
| | : | <u>Count Six</u> |
| | : | 18 U.S.C. § 666(a)(2) |
| | : | 18 U.S.C. § 2 |

## I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting at Newark,

charges as follows:

### COUNTS ONE AND TWO
(Wire Fraud)

### Background and Relevant Parties

1.     At all times relevant to this Indictment:

a.     Defendant CESAR HUMBERTO PINA, a/k/a "Flipping NJ"

("PINA"), resided in New Jersey and held himself out to be a real estate investor and

developer.

b.     Individual-1, PINA's business partner, was a well-known disc

jockey and radio personality who resided in New Jersey.

c.     Victim-1 resided in New Jersey.

d.     Victim-2 resided in New Jersey.

e.     Whairhouse LLC ("Whairhouse") was a New Jersey limited liability company that PINA controlled.

f.     FromStart2Flip LLC, a/k/a "From Start 2 Flipping LLC" ("From Start 2 Flipping") was a New Jersey limited liability company that PINA controlled.

g.     383-391 Totowa Ave LLC, a/k/a "383 391 Totowa Ave LLC" ("383-391 Totowa Ave") was a New Jersey limited liability company that PINA controlled.

### The Scheme to Defraud

2.     From in or around 2017 through in or around 2024, in the District of New Jersey, and elsewhere, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud investors, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations, and promises, as set forth below.

### Goal of the Scheme to Defraud

3.     The goal of the scheme was for PINA to enrich himself and his associates by soliciting and obtaining millions of dollars of victim investors' funds through false and fraudulent pretenses, representations, promises, and the concealment of material facts.

2

## Manner and Means of the Scheme to Defraud

4.    It was part of the scheme to defraud that:

a.    Starting as early as in or around 2017, PINA began soliciting and obtaining investments from individual investors (the "Victims") for the alleged purchase, renovation, and sale of specific real estate projects in New Jersey and other states.

b.    PINA and Individual-1 operated a company that conducted real estate seminars around the country.  In real estate seminars, private one-on-one sessions, advertisements, public appearances, social media postings, and other oral and written communications, PINA represented that he was a highly successful real estate investor, owned thousands of properties in multiple states, and had business relationships with various celebrities.  Through these efforts, PINA developed a significant following that included hundreds of thousands of social media followers, which he used to solicit investors for his companies.

c.    PINA generally executed contracts with the Victims that specified, among other things, the purpose of the investment, promised interest payments, and the timeframe for repayment.  Many of these contracts specifically stated that the Victims' money would be used for the "purchase, remodel and sale" of a particular real estate property named in the contract.  PINA also falsely represented in written and oral communications with prospective investors that their funds would be used for such purposes.  In reality, PINA used money from Victims for other purposes, including to pay for personal and unauthorized business expenses, and to pay off other investors in a Ponzi-like manner.

3

d.      Pina also failed to disclose material information about the properties the Victims were purportedly investing in, including that PINA was obtaining other loans and/or investments for the same properties.

<u>Material Misrepresentations and Omissions About the Properties</u>

e.      PINA often concealed from Victims that PINA already owned the property they were investing in, that PINA had already obtained a mortgage or other loan on the property they were investing in, and/or that PINA had obtained and/or would obtain investments from other Victims for the same property.

f.      Due to these and other material misrepresentations and omissions, PINA often obtained multiple times the value of a specific property, including the two properties described below, from Victims and other sources.

### *The Manchester Avenue Property*

g.      On or about April 4, 2019, PINA used Whairhouse to purchase a property, located on Manchester Avenue in Paterson, New Jersey ("Property-1"), for approximately $140,000.

h.      From at least in or around July 2019 through in or around April 2023, PINA solicited and received investments from numerous Victims for the purported purchase, renovation, and sale of Property-1. PINA concealed from those Victims, among other things, that he already owned Property-1, that he already had obtained a mortgage on Property-1, and/or that he had obtained and/or would obtain money from other Victims to invest in Property-1. As a result, PINA fraudulently obtained investments from Victims grossly exceeding the purchase price of Property-1 and the potential costs of renovating and "flipping" the property.

4

i.      For example, in or around August 2022, Victim-1 entered into a contract with From Start 2 Flipping.  Pursuant to the contract, Victim-1 agreed to make a capital contribution of approximately $100,000 to enter into a joint venture for the "purchase, remodel and sale" of Property-1.  The contract further stated that PINA would return Victim-1's capital contribution within five months, plus an interest payment of approximately $30,000, amounting to an approximately 30% return on investment.  Among other things, PINA fraudulently failed to disclose to Victim-1 that PINA already owned Property-1, that he already had a mortgage on Property-1, and that he had obtained and would obtain other Victims' investments for Property-1.  In or around August 2022, in reliance on PINA's false and fraudulent misrepresentations and omissions, Victim-1 wired PINA approximately $600,000 for investments in Property-1 and two other properties.

j.      In or around October 2022, Victim-2 signed a contract with PINA in which Victim-2 agreed to make a capital contribution of approximately $400,000 to enter into a joint venture for the "purchase, remodel and sale" of Property-1 and one other property.  The contract further stated that PINA would return Victim-2's capital contribution within five months, plus an interest payment of approximately $120,000, amounting to an approximately 30% return on investment.  Among other things, PINA fraudulently failed to disclose to Victim-2 that PINA had a mortgage on Property-1 and had obtained and would obtain other Victims' investments for Property-1.  In or around October 2022, in reliance on PINA's false and fraudulent misrepresentations and omissions, Victim-2 wired PINA approximately $400,000 for investments in Property-1 and one other property.

k.    To date, Pina has not paid Victim-1, Victim-2, and other Victims most or all of the principal and interest owed to them for their Property-1 investments.

### *The Park Avenue Property*

l.    On or about November 14, 2018, PINA used Whairhouse to purchase a property, located on Park Avenue in Paterson, New Jersey ("Property-2"), for approximately $225,000.

m.    From at least in or around January 2021 through in or around March 2023, PINA solicited and received investments from numerous Victims for the purchase, renovation, and sale of Property-2.  Again, PINA concealed from those Victims, among other things, that he already owned Property-2, that he already had obtained a mortgage on Property-2, and/or that he had obtained and would obtain money from other Victims to invest in Property-2.  As a result, PINA fraudulently obtained investments from Victims grossly exceeding the purchase price of Property-2 and the potential costs of renovating and "flipping" the property.

n.    For example, Victim-1 signed a contract with From Start 2 Flipping in or around August 2022 concerning an investment in Property-2.  The contract provided that Victim-1 would make a capital contribution of $250,000 to enter into a joint venture for the "purchase, remodel and sale" of Property-2.  PINA further promised to repay Victim-1's capital contribution within five months, plus approximately $75,000 in interest, amounting to approximately 30% in return on investment.  PINA made misrepresentations and concealed material information from Victim-1, including, among other things, that he already owned Property-2,

already had a mortgage on Property-2, and had obtained and would obtain other Victims' investments for Property-2. In or around August 2022, in reliance on PINA's false and fraudulent misrepresentations and omissions, Victim-1 wired PINA $600,000 to invest in Property-2 and two other properties (including Property-1).

o.      To date, PINA has not paid Victim-1 and other Victims most or all of the principal or interest from their Property-2 investments.

PINA Misappropriated Investor Money

p.      To keep his scheme from unravelling, PINA misappropriated Victims' funds to make payments to other investors in a Ponzi-like manner.

q.      PINA concealed the Ponzi payments from Victims and prospective investors by, among other things, failing to disclose that their money would be used to pay off other investors and by failing to disclose to investors that some of their payouts were derived from other investors' money, rather than from legitimate investment returns.

r.      PINA and his associates also misappropriated Victims' funds for personal expenses, including luxury clothing, vacations, luxury vehicles, and beauty supplies, and to pay for business expenditures unrelated to the purpose of the Victims' investments.

s.      PINA has still not paid dozens of Victims most or all of their promised principal and interest, resulting in millions of dollars of losses.

## Execution of the Scheme to Defraud

5.    On or about the dates set forth below, for the purpose of executing and attempting to execute the scheme and artifice to defraud, in the District of New Jersey and elsewhere, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate commerce, the following writings, signs, signals, pictures, and sounds, each constituting a separate count of this Indictment:

| Count | Approximate Date | Description |
|---|---|---|
| One | August 29, 2022 | PINA caused an interstate wire that passed through New Jersey of approximately $600,000 to be sent by Victim-1 to From Start 2 Flipping. |
| Two | October 5, 2022 | PINA caused an interstate wire that passed through New Jersey of approximately $400,000 to be sent by Victim-2 to Whairhouse. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT THREE
(Conspiracy to Launder Monetary Instruments)

6.     The allegations set forth in Paragraph 1 of Counts One and Two of this Indictment are realleged here.

7.     From at least as early as in or around 2020 through in or around April 2023, in the District of New Jersey, and elsewhere, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

did knowingly combine, conspire, and agree with others to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the manufacture, importation, and distribution of a controlled substance, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

9

## COUNT FOUR
(Money Laundering)

8.    The allegations set forth in Paragraph 1 of Counts One and Two of this Indictment are realleged here.

9.    On or about December 20, 2022, in the District of New Jersey and elsewhere, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a person acting at the direction of a law enforcement officer to be the proceeds of specified unlawful activity, namely, the manufacture, importation, and distribution of a controlled substance.

In violation of Title 18, United States Code, Section 1956(a)(3)(B) and Section 2.

10

## COUNT FIVE
(Money Laundering)

10.    The allegations set forth in Paragraph 1 of Counts One and Two of this Indictment are realleged here.

11.    On or about December 27, 2022, in the District of New Jersey and elsewhere, the defendant,

**CESAR HUMBERTO PINA,
a/k/a "Flipping NJ,"**

with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a person acting at the direction of a law enforcement officer to be the proceeds of specified unlawful activity, namely, the manufacture, importation, and distribution of a controlled substance.

In violation of Title 18, United States Code, Section 1956(a)(3)(B) and Section 2.

11

## COUNT SIX
(Bribery of an Agent of a Program Receiving Federal Funds)

### Background and Relevant Parties

12.     Paragraph 1 of Counts One and Two of this Indictment are realleged here.

13.     At all times relevant to this Indictment:

a.     Taylor Five Apartments LLC ("Taylor Five Apartments") was a New Jersey limited liability company that PINA controlled.

b.     Individual-2 resided in New Jersey and was a local official of the City of Paterson.

c.     Individual-3 resided in New Jersey and worked as PINA's office assistant.

d.     The Paterson Zoning Board of Adjustment ("ZBA") reviewed and approved applications for variances to zoning ordinances in the City of Paterson.  The ZBA was composed of seven voting members and two alternates who were each appointed by a member of the Paterson City Council.

e.     The City of Paterson received benefits in excess of $10,000 in the relevant one-year periods, within the meaning of Title 18, United States Code, Section 666(d)(5), under Federal programs involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance, to include funds from programs administered by the Community Planning and Development Division of the United States Department of Housing and Urban Development whose purposes were,

12

among other things, to develop viable urban communities by providing decent housing and a suitable living environment and by expanding economic opportunities.

## The Bribery Scheme

14.     From in or around 2019 through in or around 2022, in Passaic County, in the District of New Jersey, and elsewhere, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

did knowingly, corruptly, and with the assistance of others, give, offer, and agree to give to Individual-2 cash payments and other things of value in the amounts of $5,000 and more, intending to influence Individual-2 in connection with a business, transaction, and series of transactions of the City of Paterson involving a thing of value of $5,000 and more, as set forth below.

## Bribe Payments to Individual-2

15.     From in or around 2019 to in or around 2022, PINA gave a stream of concealed and undisclosed bribes to Individual-2 in exchange for Individual-2's contemplated official action, assistance, and influence to advance PINA's real estate development projects in the City of Paterson, to include exerting influence over other Paterson public officials, such as certain ZBA members, to vote in favor of variances relating to 385-391 Totowa Avenue, Paterson, New Jersey, a/k/a "Old School 5," an old schoolhouse PINA controlled and intended to develop into a multi-unit residential complex.

16.     As part of the scheme, PINA gave a stream of cash payments, checks, campaign contributions, and other benefits and things of value to Individual-2 in

13

exchange for Individual-2's official actions, assistance, and influence in favor of PINA's real estate projects, to include Old School 5. The stream of bribes PINA paid to Individual-2 included multiple cash and check payments totaling approximately $50,000, which Individual-2 received directly from PINA, or from Individual-3 at PINA's direction.

17.    In addition to directly paying bribes to Individual-2 in cash or check form, as part of the bribery scheme, PINA funneled financial benefits to Individual-2 by providing real estate listings to Individual-2, who is a licensed realtor. As a result, Individual-2 stood to earn, and did earn, real estate commissions from the sale of PINA's properties.

18.    PINA intended for these payments and financial benefits to influence Individual-2 in exchange for Individual-2's agreement to provide official action, assistance, and influence in connection with PINA's real estate development projects, to include PINA's applications for zoning variances before the ZBA in connection with his real estate development projects in the City of Paterson, including PINA's Old School 5 project.

### Individual-2's Contemplated Official Actions, Assistance, and Influence in Favor of PINA's Old School 5 Project

19.    In or around 2018, PINA, through his entity 383-391 Totowa Ave, purchased the Old School 5 property. In or around 2019, PINA, through Taylor Five

Apartments, submitted variance applications to the ZBA relating to his plans to develop Old School 5 into a 60-unit residential complex.

20.    As part of the bribery scheme, PINA sought Individual-2's assistance to obtain ZBA approval for PINA's Old School 5 applications, and Individual-2 agreed to provide such assistance in at least two ways: (1) by agreeing to exert official influence over the ZBA's scheduling in order to include PINA's Old School 5 applications in the ZBA's hearing agenda, and (2) by agreeing to exert official influence over members of the ZBA to vote in favor of PINA's Old School 5 applications.

21.    After PINA filed his Old School 5 variance applications with the ZBA, Pina provided at least two cash payments of approximately $2,500 each to Individual-2—including at least one such payment made by Individual-3 at PINA's direction in or around October 2020—in exchange for Individual-2's agreement to get the applications on the ZBA's agenda and secure sufficient votes from members of the ZBA to approve PINA's Old School 5 applications.

22.    For instance, the ZBA included PINA's Old School 5 applications in its agenda for a meeting that was scheduled to take place in or around October 2020, but the applications were ultimately not heard at that time.  Thereafter, PINA sought Individual-2's assistance in getting the applications back on the ZBA's agenda, and Individual-2 agreed to exert influence over the ZBA's scheduling to obtain a new date

for PINA's applications to be heard by the ZBA and secure votes from ZBA members in favor of the applications.

23.    In exchange for Individual-2's agreement to get the Old School 5 applications back on the ZBA's calendar and secure votes in favor of their passage, in or around December 2020, PINA directed Individual-3 to make a cash payment to Individual-2, and Individual-3 complied.

24.    On or about March 3, 2021, Individual-2 texted PINA, "You're on the agenda for March 11 on the Board." PINA's Old School 5 project was included in the publicly available agenda for the ZBA's March 11, 2021 hearing, but the applications were not approved at that time.

25.    In or around February 2022, Individual-2, acting in his capacity as realtor, represented PINA in the sale of a Paterson, New Jersey property PINA owned through his entity From Start 2 Flipping. PINA retained Individual-2 as his realtor so that Individual-2 would receive a real estate commission as part of the stream of bribes PINA paid to Individual-2 in exchange for Individual-2 agreeing to exert official influence in favor of PINA's real estate transactions. On or about March 7, 2022, Individual-2 deposited a check for approximately $18,132, representing the commission paid to Individual-2 for the sale of PINA's property.

26.    On or about August 4, 2022, the ZBA was scheduled to hear PINA's Old School 5 applications. Approximately one week before that meeting, Individual-2 texted PINA, "already spoke with mr. Chairman about your appt." In the same text message, Individual-2 referenced one of PINA's properties for which PINA had

retained Individual-2 as his realtor and for which Individual-2 stood to earn a real estate commission.  Individual-2 called the Chairman of the ZBA later that day.

27.    To date, PINA's Old School 5 applications have appeared on various agendas of the ZBA, which has heard and considered the applications but has not yet approved them.

In violation of Title 18, United States Code, Section 666(a)(2) and Section 2.

## FORFEITURE ALLEGATION ONE

Upon conviction of the offenses charged in Counts One, Two, and Six of this Indictment, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

18

## FORFEITURE ALLEGATION TWO

Upon conviction of the offenses charged in Counts Three, Four, and Five of this Indictment, the defendant,

**CESAR HUMBERTO PINA,**
**a/k/a "Flipping NJ,"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property.

## Substitute Assets Provision
(Applicable to all Forfeiture Allegations)

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

A TRUE BILL

ALINA HABBA
United States Attorney

20

CASE NUMBER: 25-436

# United States District Court
# District of New Jersey

### UNITED STATES OF AMERICA

v.

### CESAR HUMBERTO PINA,
### a/k/a "Flipping NJ"

## INDICTMENT FOR

18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(a)(3)(B)
18 U.S.C. § 666(a)(2)
18 U.S.C. § 2

A True Bill,

UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

MARK J. PESCE
CAROLYN SILANE
AARON L. WEBMAN
EDELI RIVERA
MATTHEW SPECHT
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
(973) 645-2793