UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Madeline Cox Arleo, U.S.D.J. |
| | : | |
| v. | : | Crim. No. 25-436 (MCA) |
| | : | |
| CESAR HUMBERTO PINA | : | **Oral Argument Requested** |
| | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THE INDICTMENT**[1]

---

[1] Pursuant to the July 28, 2025 designation by the Honorable Michael A. Chagares, Chief Judge of the United States Court of Appeals for the Third Circuit, Mr. Pina submits that this motion should be transferred by Your Honor or Judge Chagares to the Honorable Matthew W. Brann of the United States District Court for the Middle District of Pennsylvania as a "related case."  *See* Designation of District Judge to Hold a District Court Within the Circuit, *United States v. Julien Giraud Jr. and Julien Giraud III*, No. 1:24-cr-00768, Doc. 103 (Designation Order) (July 28, 2025).

1

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................3

ARGUMENT .......................................................................................9

I.    THE INDICTMENT IN THIS CASE WAS BROUGHT BY ALINA
      HABBA WHEN SHE HAD NO AUTHORITY TO DO SO .........................9

      1.    Ms. Habba's Appointment as Interim U.S. Attorney Had Expired
            at the Time She Brought This Indictment........................................9

      2.    Ms. Habba Had No Additional Legal Authority at the Time of
            This Indictment ..............................................................11

II.   MS. HABBA HAS NO AUTHORITY TO CONTINUE TO SUPERVISE
      OR BE INVOLVED IN THE PROSECUTION OF THIS CASE ................11

      1.    Ms. Habba Has No Authority to Serve as an Acting U.S. Attorney
            Under 5 U.S.C. § 3345 Because the Conclusion of a 28 U.S.C. §
            546 Interim Appointment Does Not Trigger 5 U.S.C. § 3345.......11

      2.    Ms. Habba is Ineligible to Serve as Acting U.S. Attorney Under
            Subsection 3345(a)(1) Because She was Not—and is Not—a
            "First Assistant" Within the Meaning of the FVRA .....................17

            a.    Under Subsection 3345(A)(1), the Only "First Assistant"
                  Who Assumes an Acting Leadership Role is the First
                  Assistant In Place At the Time The Vacancy Arises............18

            b.    Regardless of When Subsection 3345(A)(1) was Triggered,
                  Ms. Habba Has Never Been—And Never Will Be—a
                  "First Assistant" U.S. Attorney ...........................................27

      3.    Ms. Habba Cannot Serve as Acting U.S. Attorney Because the
            Submission of Her Nomination to the Senate Rendered Her
            Ineligible Under Subsection 3345(b)(1) ........................................28

III.  THE "SPECIAL ATTORNEY" POSITION CANNOT BE USED TO
      CIRCUMVENT THE VACANCY APPARATUS TO APPOINT AN
      ONGOING U.S. ATTORNEY.................................................................32

IV.   MS. HABBA IS CURRENTLY ACTING WITHOUT LEGAL
      AUTHORITY, NECESSITATING DISMISSAL OF THE
      INDICTMENT.......................................................................................34

i

1.    Ms. Habba is Acting Without Authority ........................................ 35

2.    The Indictment Must Be Dismissed ............................................. 35

3.    Should this Case Be Re-Presented to a Grand Jury, Ms. Habba Cannot Supervise or Be Involved in is Presentation or Subsequent Prosecution ..................................................................................... 37

CONCLUSION ....................................................................................... 38

# TABLE OF AUTHORITIES

## Cases

*Bulova Watch Co. v. United States*, 365 U.S. 753 (1961).................................. 12, 13

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)....................................29

*FDIC v. Meyer*, 510 U.S. 471 (1994).........................................................27

*Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016) ............13

*In re Mayer*, 2006 WL 20526 (D.N.J. Jan. 4, 2006) .................................36

*L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) ................................ *passim*

*N.L.R.B. v. SW General, Inc.*, 580 U.S. 288 (2017).......................................... *passim*

*Nasdaq Stock Mkt. LLC v. Sec. & Exch. Comm'n*, 38 F.4th 1126 (D.C. Cir. 2022).15

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012)...........12

*Sherwood v. Sutton*, 21 F. Cas. 1303 (C.C.D.N.H. 1828) .........................................27

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001). ...............................................................23

*United States v. Crosthwaite*, 168 U.S. 375 (1897) .................................................33

*United States v. Eaton*, 169 U.S. 331 (1898) ............................................................22

*United States v. Hansen*, 599 U.S. 762 (2023) ........................................................15

*United States v. Huston*, 28 F.2d 451 (N.D. Oh. 1928)............................................37

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ...................................37

*United States v. Williams*, 65 F.R.D. 422 (W.D. Mo. 1974) ....................................36

*Williams v. Taylor*, 529 U.S. 362 (2000)..................................................................10

## Statutes

1868 Vacancies Act .....................................................................................................19

28 U.S.C. § 515............................................................................................... 32, 33

28 U.S.C. § 546............................................................................................... *passim*

5 U.S.C. § 3345 ................................................................................. *passim*

5 U.S.C. § 3346 ...............................................................................18

5 U.S.C. § 3347 ...............................................................................34

5 U.S.C. § 3348 ...............................................................................36

Federal Vacancies Reform Act of 1998, S. Rep. No. 105-250 (Jul. 15, 1998)
................................................................................……11, 26, 27


**Other Authorities**

Fed. R. Crim. Pro. 1 .......................................................................36

Fed. R. Crim. Pro. 7 .......................................................................36

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947) ...................................................................................26

Letter from Members of the U.S. Senate Comm. on Com., Sci., & Transp. to President Joseph R. Biden, Jr. (Sept. 20, 2023) .................................. 31, 32

Letter from Senator Thurmond, to Att'y Gen. Janet Reno, at 2 (Jan. 23, 1998) .....26

Memorandum for William P. Tyson, Director, Exec. Office for U.S. Att'ys, from Samuel A. Alito, Jr., Deputy Asst. Att'y Gen., Office of Legal Counsel (Nov. 13, 1986) .............................................................................................10

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967 (2021) ...........................26

Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS* (Sept. 9, 2019) ..............................................................................26

Steven J. Duffield & James C. Ho, *The Illegal Appointment of Bill Lann Lee*, 2 Tex. Rev. L. & Pol. 335 (1998) ..................................................................25

The Federalist No. 76 (C. Rossiter ed. 1961) (A. Hamilton)...................................19

Thomas A. Berry, *S.W. General: The Court Reins in Unilateral Appointments*, Cato Sup. Ct. Rev., 2016-2017 .........................................................................25

**INTRODUCTION**

Cesar Pina, by and through counsel, moves to dismiss the indictment and seeks other relief in the above-captioned matter based on the unlawful appointment and continued occupancy of the office of the U.S. Attorney for the District of New Jersey by Alina Habba. Mr. Pina is entitled to relief because Ms. Habba was acting under an expired Interim U.S. Attorney appointment when she authorized and signed his indictment, and continues to act without legal authority for the Office to prosecute the case under her supervision. Statutory provisions bar Ms. Habba from serving as Acting U.S. Attorney, and her Special Attorney designation cannot be used to circumvent those statutory barriers.

Simply stated, the six-count indictment of Mr. Pina must be dismissed because Ms. Habba authorized, signed and returned it after her term as Interim U.S. Attorney had expired. As set forth in more detail below, when a U.S. Attorney's post is vacant, the Attorney General of the United States may appoint an Interim U.S. Attorney, 28 U.S.C. § 546(a). A person appointed by the Attorney General to fill a vacancy may serve until the President appoints a new U.S. Attorney under section 541(a), or "until the expiration of 120 days after appointment." 28 U.S.C. § 546(c)(2). After the 120 days expires, the district court "may appoint a United States Attorney to serve until the vacancy is filled." 28 U.S.C.§ 546(d).

1

In this case, Attorney General Pamela J. Bondi appointed John Giordano as Interim U.S. Attorney for the District of New Jersey on March 3, 2025. His appointment took up no less than 21 days of the interim period afforded to Ms. Bondi. On March 24, 2025, the President announced that he was appointing Ms. Habba as Interim U.S. Attorney, "effective immediately!" Three days later, the Attorney General issued an Order confirming the appointment of Ms. Habba as interim U.S. Attorney, effective March 28, 2025. And on March 28, 2025, Mr. Giordano announced his resignation as Interim U.S. Attorney.

With the appointment of an Interim U.S. Attorney (Mr. Giordano) on March 3, 2025, the statutory 120-day limit for the interim appointment began to run; it continued to run with the subsequent appointment of Ms. Habba on March 24 or March 28; and it expired on July 1, 2025. Therefore, any actions taken by Ms. Habba as Interim U.S. Attorney after July 1 were without proper authority, and null and void.

Mr. Pina's Indictment in this matter was signed by Ms. Habba as the Interim United States Attorney and filed on July 7, 2025, six days after her term as Interim U.S. Attorney expired. ECF 44 at 20. As described further herein, her continued occupancy of the office on and after July 1 was improper and without authority for additional reasons. On that basis, Ms. Habba's indictment of Mr. Pina therefore was *ultra vires* and must be dismissed, and her involvement with the case must end.

2

## BACKGROUND

As the timing of the events is critical, the following timeline summarizes the

relevant actions and dates:

| Date | Event |
|------|-------|
| 1/8/25 | The Senate-confirmed U.S. Attorney for the District of New Jersey, Philip Sellinger, resigns from office. First Assistant U.S. Attorney Vikas Khanna becomes Acting U.S. Attorney under the Federal Vacancies Reform Act of 1998.[2] 5 U.S.C. § 3345(a)(1). |
| 3/3/25 | Attorney General Bondi appoints John Giordano as the Interim U.S. Attorney for the District of New Jersey under 28 U.S.C. § 546.[3]<br><br>[120 days from 3/3/25 = 7/1/25] |
| 3/24/25 | President Trump posts on Truth Social that Ms. Habba "will be our Interim U.S. Attorney for the District of New Jersey, her Home State, effective immediately!"[4]<br><br>Ms. Habba gives statement at White House: "President Trump has appointed me" and "I will be leaving the White House soon to serve in my new role, my current role."[5]<br><br>[120 days from 3/24/25 = 7/22/25] |

[2] Press Release, *U.S. Attorney Philip R. Sellinger Announces His Resignation* (Dec. 23, 2024), https://www.justice.gov/usao-nj/pr/us-attorney-philip-r-sellinger-announces-his-resignation.

[3] Press Release, *John Giordano Sworn In As 64th U.S. Attorney for District of New Jersey*, U.S. Attorney's Office, District of New Jersey (Mar. 5, 2025), https://www.justice.gov/usao-nj/pr/john-giordano-sworn-64th-us-attorney-district-new-jersey.

[4] @realDonaldTrump, Truth Social (Mar. 23, 2025, 10:37 a.m.), https://truthsocial.com/@realDonaldTrump/posts/114217913229258108.

[5] Alina Habba on Appointment as Interim U.S. Attorney for New Jersey, C-SPAN (March 24, 2025), https://www.c-span.org/program/white-house-event/alina-habba-on-appointment-as-interim-us-attorney-for-new-jersey/657591.

| Date | Event |
|---|---|
| 3/27/25 | Attorney General Bondi signs DOJ Order No. 6218-2025, *Authorizing Alina Habba to be the Interim United States Attorney for the District of New Jersey During the Vacancy in that Office*: "By virtue of the authority vested in the Attorney General by 28 U.S.C. § 546, I designate and appoint Alina Habba to be the United States Attorney for the District of New Jersey as of March 28, 2025, and through May 26, 2025."<br><br>[120 days from 3/28/25 = 7/26/25] |
| 3/28/25 | Mr. Giordano announces he is stepping down as U.S. Attorney.[6] |
| 5/19/25 | Attorney General Bondi signs DOJ Order No. 6270-2025: *Authorizing Alina Habba to be the Interim U.S. Attorney for the District of New Jersey During the Vacancy in that Office*: "By virtue of the authority vested in the Attorney General by 28 U.S.C. § 546, I extend the designation and appointment of Alina Habba as the United States Attorney for the District of New Jersey. This order shall be effective May 27, 2025, through July 25, 2025, or until a Presidential appointee qualifies under 28 USC § 541, whichever occurs first." |
| 7/1/25 | EXPIRATION OF 120 DAYS AFTER APPOINTMENT OF THE INTERIM US ATTORNEY (JOHN GIORDANO).<br><br>[120 days from 3/3/25 = 7/1/25] |
| 7/7/25 | Mr. Pina is indicted. The indictment is signed by Alina Habba as "United States Attorney" for the District of New Jersey. |

---

[6] Press Release, *U.S. Attorney John Giordano Thanks President Donald Trump And Attorney General Pamela Bondi Upon His Departure From The District Of New Jersey*, U.S. Attorney's Office, District of New Jersey (Mar. 28, 2025), https://www.justice.gov/usao-nj/pr/us-attorney-john-giordano-thanks-president-donald-trump-and-attorney-general-pamela.

| Date | Event |
|------|-------|
| 7/20/25 | Deputy Attorney General Todd Blanche reportedly calls DNJ Chief Judge Renee Bumb in support of extending Ms. Habba's appointment in office as U.S. Attorney.[7] |
| 7/22/25 | EXPIRATION OF 120 DAYS AFTER PRESIDENT TRUMP APPOINTED ALINA HABBA "effective immediately!"<br><br>[120 days from 3/24/25 = 7/22/25] |
| | Chief Judge Bumb signs Standing Order 2025-03, *In re Appointment of United States Attorney for the District of New Jersey*: "Pursuant to Title 28, United States Code, Section 546(d), the United States District Court for the District of New Jersey appoints Desiree Leigh Grace as the United States Attorney for the District of New Jersey. This appointment is effective July 22, 2025, or 'upon the expiration of 120 days after appointment by the Attorney General' of the Interim U.S. Attorney Alina Habba, whichever is later."[8] |
| | DOJ issues "Memorandum for Desiree Leigh Grace," *Notice of Removal from Federal Service*: "This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, Criminal Division, District of New Jersey, Office of the United States Attorneys, and from the federal service, effective immediately.<br><br>Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately." |

---

[7] David Wildstein, *Federal judges told Habba has full confidence of Trump*, N.J. Globe (July 20, 2025), https://newjerseyglobe.com/judiciary/federal-judges-told-habba-has-full-confidence-of-trump/.

[8] Standing Order 2025-03 (July 22, 2025), https://www.njd.uscourts.gov/sites/njd/files/StandingOrder2025-03USAttyAppointment.pdf.

| Date | Event |
|------|-------|
| 7/24/25 | Interim U.S. Attorney Habba "resigns" in letter to Attorney General Bondi: "I hereby resign my position as Interim United States Attorney for the District of New Jersey effective at 5:00 pm today, July 24, 2025. I look forward to continuing to lead the US Attorney's Office for the District of New Jersey." |
| 7/24/25 | Per DOJ letter, Ms. Habba is "appointed as a Special Attorney to the United States Attorney General pursuant to 28 U.S.C. § 515. Subject to the terms and conditions set forth, she is authorized to conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct.  This appointment is effective the date of this letter and is made subject to the following terms and conditions: <br><br> 1. This appointment is indefinite but may be terminated at any time without cause." |
| 7/24/25 | Attorney General Bondi signs DOJ Order No. 6341-2025: <br><br> *Appointment of Alina Habba as Special Attorney and Designation as First Assistant United States Attorney for the District of New Jersey*: <br><br> "By virtue of the authority vested in the Attorney General by law, including 28 U.S.C § 509, 510, and 515, I hereby appoint Alina Habba as a Special Attorney and designate her as a First Assistant United States Attorney for the District of New Jersey, effective upon her resignation as United States Attorney for the District of New Jersey.  As First Assistant United States Attorney, Ms. Habba will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d." |

| Date | Event |
|---|---|
| 7/24/25 | DOJ Memorandum for the Attorney General from Francey Hakes

*Subject*: Special Attorney Appointment and Designation as First Assistant U.S. Attorney for the District of New Jersey

Decision Requested by July 24, 2025: The Attorney General's Office has requested that Alina Habba be appointed to this critical position as soon as possible so that she may lead the office in carrying out the priorities of the Administration

"Executive Summary: The last presidentially appointed United States Attorney for the District of New Jersey resigned on January 8, 2025, thereby creating a vacancy in the position. Since that time, the position of U.S. attorney has been filled on an interim basis through an Attorney General appointment pursuant to 28 U.S.C. § 546. The Executive Office for United States Attorneys requests that the position be filled with an individual selected by the current administration pursuant to 28 U.S.C. §§ 509, 510, and 515. The appointee meets the residency requirement of the position. Proposed appointment order is attached for your consideration."

"As First Assistant United States Attorney, Ms. Habba will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d."

"The proposed Order [for Attorney General Bondi] would appoint Alina Habba as a Special Attorney and further designate her as First Assistant United States Attorney for the District of New Jersey, effective upon her resignation as U.S. Attorney for the District of New Jersey. We have been advised that Ms. Habba has submitted a letter of resignation from the position of U.S. Attorney, which she held pursuant to an appointment by the Attorney General under 28 U.S.C. § 546(a), effective 5:00 pm today." |

| Date | Event |
|------|-------|
| 7/26/25 | Letter from Jay Macklin (General Counsel, EOUSA) to Desiree Grace advising her that she "will not serve as the United States Attorney for the District of New Jersey" and that "the District Court for the District of New Jersey lacked legal authority to appoint [her] as United States Attorney under 28 U.S.C. § 546(d) because Alina Habba's appointment by the Attorney General had not yet expired under 28 U.S.C. § 546(c)(2). Nor did it expire. Instead, Ms. Habba resigned her interim position as United States Attorney on July 24, 2025, before her appointment expired." |
| | Moreover, "even if the District Court had the authority to appoint you as United States Attorney, I am informed that the President of the United States has removed you from that office today, pursuant to his authority under 28 U.S.C. § 541(c) and Article II of the U.S. Constitution.  Either way effective, July 24, 2025, the Attorney General appointed Ms. Habba to serve as the First Assistant United States Attorney pursuant to the Attorney General's authority under 28 U.S.C. § 542(a).  Thus, as of that date, Ms. Habba became the Acting U.S. Attorney by operation of law under the provisions of 5 U.S.C. § 3345(a)(1)." |
| 7/26/25 | Saurabh Sharma (*Special Assistant to the President, Office of Presidential Personnel*) personally emails Disiree Grace:  "You may not lawfully serve as the United States Attorney for the District of New Jersey. The District Court for the District of New Jersey lacked authority to appoint you under 28 U.S.C. 546(d), because Alina Habba resigned as United States Attorney on July 24, 2025, which was before her appointment expired under 28 U.S.C. 546(c)(2) at the end of July 25, 2025. Regardless, even if the District Court had such authority, the President of the United States hereby removes you from office pursuant to his authority under 28 U.S.C. 541(c) and Article II of the Constitution. On July 24, 2025, the Attorney General appointed Alina Habba the First Assistant United States Attorney pursuant to her authority under 28 U.S.C. 542(a), and Alina Habba is thus the Acting United States Attorney pursuant to 5 U.S.C. 3345(a)(1)." |

**ARGUMENT**

**I.    THE INDICTMENT IN THIS CASE WAS BROUGHT BY ALINA HABBA WHEN SHE HAD NO AUTHORITY TO DO SO**

**1.    Ms. Habba's Appointment as Interim U.S. Attorney Had Expired at the Time She Brought this Indictment**

28 U.S.C. § 546 provides a means for the Attorney General to *temporarily* appoint Interim U.S. Attorneys, subject to a 120-day time limit. If no presidential nominee is confirmed by the Senate, an Interim U.S. Attorney may serve until "the expiration of 120 days after appointment by the Attorney General," at which point "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d).

After that 120-day period ends, the Attorney General loses her authority to determine who may serve as Interim U.S. Attorney. If the Attorney General could appoint an unlimited number of successive interim heads for an endless number of terms, the statutory scheme for appointing both interim and full-time U.S. Attorneys would be functionally meaningless. The Attorney General could appoint a new individual as Interim U.S. Attorney on day 119 (and then repeat it 119 days later, and so on), thereby preventing the district court from invoking its authority under Section 546(d), and depriving the Senate of its "advice and consent" role in the appointments process under 28 U.S.C. § 541(a).

9

The plain language and legislative history of 28 U.S.C. § 546 dictate that the Attorney General is not permitted to "stack" or make multiple, successive 119-day interim appointments. 28 U.S.C. § 546(c)(2) states "120 days after appointment," not "120 days after *an* appointment." It is the filling of the vacant spot—not the name of the person—that triggers the 120-day period. The Justice Department itself has previously endorsed this view. In 1986, then-Assistant Attorney General Samuel A. Alito authored an OLC memorandum explaining that the Attorney General could not make successive interim appointments. *See* Memorandum for William P. Tyson, Director, Exec. Office for U.S. Att'ys, from Samuel A. Alito, Jr., Deputy Asst. Att'y Gen., Office of Legal Counsel (Nov. 13, 1986).[9] Additionally, subsection 546(a) was enacted *after* subsection 546(d). If the Attorney General were permitted to stack 120-day appointments under subsection 546(a), then subsection 546(d) would be surplusage which Congress would have eliminated. Because Congress did not eliminate subsection (d), this Court should assume the provision is intended to serve a useful function. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is . . . a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).

---

[9] The Alito memorandum is not publicly available, but other publicly accessible OLC documents describe the content of the Alito memorandum referenced herein. *See* 17 Op. Off. Legal Counsel 1, 1-5 (1993), *available at* https://www.justice.gov/file/147411/dl?inline.

Attorney General Bondi appointed John Giordano Interim U.S. Attorney on March 3, 2025, beginning the 120-day interim period pursuant to 28 U.S.C. § 546(a), which expired on July 1, 2025. Accordingly, Ms. Habba's Interim U.S. Attorney appointment expired on July 1, at which point the District Court for the District of New Jersey was empowered, pursuant to subsection 546(d), to "appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d).

### 2. Ms. Habba Had No Additional Legal Authority at the Time of This Indictment

On the date Ms. Habba signed Mr. Pina's indictment as "United States Attorney," July 7, 2025, she was acting without legal authority. She was not a Senate-confirmed U.S. Attorney, not an Interim U.S. Attorney, not an Acting U.S. Attorney, not First Assistant, and not even a duly-authorized Special Attorney. Because she was acting under no legal authority in bringing this indictment, Ms. Habba's actions are *ultra vires* and the indictment must be dismissed.

## II. MS. HABBA HAS NO AUTHORITY TO CONTINUE TO SUPERVISE OR BE INVOLVED IN THE PROSECUTION OF THIS CASE

### 1. Ms. Habba Has No Authority to Serve as an Acting U.S. Attorney Under 5 U.S.C. § 3345 Because the Conclusion of a 28 U.S.C. § 546 Interim Appointment Does Not Trigger 5 U.S.C. § 3345

The Government contends that when Ms. Habba ran out of authority under 28 U.S.C. § 546, her resignation triggered a provision of the Federal Vacancies Reform Act ("FVRA") that propelled her right back into an "acting" role in the same office.

*See United States v. Giraud III et al*, 1:24-cr-00768-MWB, ECF 108, 114. This theory—in addition to being operationally unworkable—is fundamentally incompatible with the text of the two statutes, the intent of Congress, and broader principles of separation of powers. When the Attorney General's power to fill a U.S. Attorney vacancy under Section 546 expires after 120 days, the sole mechanism for filling that vacancy is provided by subsection 546(d). And even if alternative mechanisms existed, the statutory provision upon which the Government has attempted to rely—5 U.S.C. § 3345(a)(1)—is triggered only by the departure of a Senate-confirmed official. Ms. Habba's resignation was not that.

Though the Attorney General has the power to invoke 28 U.S.C. § 546 to replace an Acting U.S. Attorney who had been serving under 5 U.S.C. § 3345(a), the lapsing of the Attorney General's 28 U.S.C. § 546 appointment does not re-trigger 5 U.S.C. § 3345(a). This order of operations is not a mere technicality. It is axiomatic that "a specific statute controls over a general one." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission[,] . . . [b]ut the canon has full application as well to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

That is precisely the relationship between 5 U.S.C. § 3345 and 28 U.S.C. § 546.  Section 3345 provides the default mechanism for filling a vacancy in an Executive agency office "*unless* another statute expressly provides a means for filling such a vacancy." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (emphasis added).  28 U.S.C. § 546 is one such specific statute, as it expressly provides a means for filling a U.S. Attorney vacancy.  "Thus, the President is permitted to elect *between* these two statutory alternatives to designate an [acting officer]." *Id.* at 556 (emphasis added).

Here, the President (through the Attorney General) elected to use 28 U.S.C. § 546 to displace 5 U.S.C. § 3345. On January 8, 2025, Philip Sellinger, the Senate-confirmed U.S. Attorney for the District of New Jersey, resigned.[10]  At that moment, First Assistant U.S. Attorney Vikas Khanna automatically assumed the post of Acting U.S. Attorney pursuant to 5 U.S.C. § 3345(a).  Mr. Khanna continued to serve as Acting U.S. Attorney until March 3, 2025, when the President (through the Attorney General) invoked 28 U.S.C. § 546 to appoint John Giordano as Interim U.S. Attorney.  This move ended Mr. Khanna's tenure under Section 3345, as the "specific statute controls over [the] general one." *Bulova Watch Co.*, 365 U.S. at

---

[10] Press Release, *U.S. Attorney Philip R. Sellinger Announces His Resignation* (Dec. 23, 2024), https://www.justice.gov/usao-nj/pr/us-attorney-philip-r-sellinger-announces-his-resignation.

13

758.  A few weeks later, the President again invoked Section 546 to replace Mr. Giordano with Ms. Habba.

Even though subsection 546(d) plainly dictates what happens at the end of a Section 546 appointment, the Government now contends that 5 U.S.C. § 3345(a)—not 28 U.S.C. § 546—controls in this scenario.  But under bedrock principles of statutory interpretation, 28 U.S.C. § 3345 and 5 U.S.C. § 546 are not engaged in a tennis match.  Because the President chose to invoke the specific mechanism provided by 28 U.S.C. § 546 to override the "general rule" of 5 U.S.C. § 3345(a)(1), *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 288 (2017), Section 546 controls as long as the position remains vacant.  Section 3345 does not reemerge to somehow displace 28 U.S.C. § 546(d).

Subsection 546(d) is unambiguous about the one option when a Section 546 appointment lapses: "the district court for such district may appoint a United States attorney to serve until the vacancy is filled."  28 U.S.C. § 546(d).  The statute makes no reference to 5 U.S.C. § 3345(a) or any other alternative mechanism for filling the vacancy, and the Government cannot graft that additional option to the text. When Congress last amended 28 U.S.C. § 546 in 2007, it was aware of 5 U.S.C. § 3345(a), which Congress had enacted as part of the FVRA in 1998.  Yet 28 U.S.C. § 546 makes no mention of 5 U.S.C. § 3345(a).  If Congress had intended that provision to serve as an alternative to subsection 546(d), it would have said so.  "[W]here the

14

context shows that the draftsmen's mention of one thing, like a grant of authority, does really necessarily, or at least reasonably, imply the preclusion of alternatives, the [*expressio unius*] canon is a useful aide." *Nasdaq Stock Mkt. LLC v. Sec. & Exch. Comm'n*, 38 F.4th 1126, 1137 (D.C. Cir. 2022) (citations omitted).

The reading advanced by the Government is not only contrary to core principles of statutory interpretation; it also gives rise to difficult constitutional questions. "When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). Thorny separation-of-powers questions abound if—as the Government contends—5 U.S.C. § 3345 is triggered by the lapsing of a 28 U.S.C. § 546 appointment. The district court's authority to appoint someone pursuant to subsection 546(d) is not time bound; it "may appoint" someone "*if* an appointment expires"—*i.e.*, if President's nominee has not been confirmed by the Senate within 120 days of the Attorney General's invocation of 28 U.S.C. § 546(a). The Court need not exercise this authority right away. The statute does not indicate that the district court's ability to use subsection 546(d) evaporates if it does not pick a replacement within 24 hours. Because the district court's subsection 546(d) power does not lapse immediately, the Government's interpretation of the relationship between 28 U.S.C. § 546 and 5 U.S.C. § 3345 places the two statutes on a constitutional collision course. Take the following hypothetical:

15

The Attorney General invokes her 28 U.S.C. § 546(a) authority to appoint an Interim U.S. Attorney to a 120-day term. When the term expires on Day 120, the District Court has not yet named a replacement to fill the vacancy.

According to the Government's theory, 5 U.S.C. § 3345(a)(1) then dictates that the person serving as the First Assistant at that moment automatically becomes the Acting U.S. Attorney. But what if on day 121, the district court—pursuant to its subsection 546(d) authority—names someone else to lead the office? Who is in charge? If it's the court's pick, which must be true given that 28 U.S.C. § 546 is the more specific statute, what happens if the President fires the court's subsection 546(d) appointee? Does the person serving as First Assistant at that time suddenly re-assume the role of Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1)? And could the court, pursuant to its subsection 546(d) authority, then replace that person with someone else? Would such an appointment violate separation of powers? The Government's strained reading of the relationship between 28 U.S.C. § 546 and 5 U.S.C. § 3345 pits the two statutes in a perpetual tension, creating an unnecessary conflict that would force courts to answer constitutional questions about whether the judiciary or the executive has the last word.

The Government may contend that we do not need to resolve those hypothetical questions in this case. The Government seemingly believes that it evaded such conflict here because Ms. Habba resigned on day 119, and thus her appointment did not "expire." Consequently, the Government argues, the district

16

court never inherited the power to appoint under subsection 546(d), as only the "expiration of 120 days after appointment" triggers subsection 546(d). This is incorrect. The Attorney General cannot prevent her appointment power from ever expiring by directing the Interim U.S. Attorney to resign on day 119. As explained, the "expiration of 120 days after appointment" means 120 days *after* the Attorney General invokes her subsection 546(a) authority, not 120 days after a specific person's appointment as interim. Subsection 546(d) kicks in on day 120—unless the Senate confirms the President's nominee before that date. Further, even if the Attorney General had managed to escape this statutory conflict and preserve her power by pulling the nomination on the 119th day, the Government's theory of the two statutes dictates that this conflict will inevitably emerge any time a 28 U.S.C. § 546 appointment expires. The Court cannot ignore the constitutional or operational implications of this atextual and functionally untenable theory.

### 2. Ms. Habba is Ineligible to Serve as Acting U.S. Attorney Under Subsection 3345(a)(1) Because She was Not—and is Not—a "First Assistant" Within the Meaning of the FVRA

Even if we accepted the Government's flawed premise that 5 U.S.C. § 3345(a)(1) kicks in when a 28 U.S.C. § 546 appointment ends, Ms. Habba is ineligible to serve under subsection 3345(a)(1) for two reasons. First, Ms. Habba was not—and never will be—the "first assistant" within the meaning of 5 U.S.C. § 3345(a)(1). The term "first assistant" in subsection 3345(a)(1) refers to the

17

individual serving as first assistant *at the time* the vacancy arises. That was Mr. Khanna, not Ms. Habba. And regardless of that temporal constraint, Ms. Habba is not a "first assistant" under subsection 3345(a) because she "never did and never will serve in a subordinate role." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24 (D.D.C. 2020).

Second, subsection 3345(b)(1)(A) categorically bars Ms. Habba from serving as an acting officer because the President submitted her nomination to the Senate. The act of withdrawing a nomination, which the text of Section 3345 does not mention, is not a magic pill that allows a failed nominee to evade subsection 3345(b)(1)(A). The FVRA was enacted precisely to prevent a stalled nominee from serving as the acting head of that same office. To greenlight the loophole the Government proposes, the Court would need to fully ignore the history that gave rise to the statute's enactment.

### a. Under Subsection 3345(A)(1), the Only "First Assistant" Who Assumes an Acting Leadership Role is the First Assistant In Place At The Time the Vacancy Arises

The Government asserts that under subsection 3345(a)(1), "first assistant" refers to anyone the Attorney General chooses to bestow that title upon during the pendency of a vacancy. In its view, subsection 3345(a)(1) thus gives the Attorney General the power to handpick the Acting U.S. Attorney whenever the position is vacant (within the time constraints of 5 U.S.C. § 3346). This interpretation

contradicts the text and structure of the FRVA, as well as the history that led to its enactment. The FVRA envisions no such role for the Attorney General.

Because "the Framers envisioned [the Appointments Clause] as 'an excellent check upon a spirit of favoritism in the President' and a guard against 'the appointment of unfit characters . . . from family connection, from personal attachment, or from a view to popularity,'" *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 293 (2017) (quoting The Federalist No. 76, p. 457 (C. Rossiter ed. 1961) (A. Hamilton)), the ability to vest authority in an acting officer has always been limited. "Since President Washington's first term, Congress has given the President *limited* authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval." *SW General*, 580 U.S. at 294 (emphasis added).

The 1868 Vacancies Act, the first comprehensive Vacancies Act passed by Congress, "expanded the number of PAS offices that the *President* could fill with acting officers." *Id.* at 294 (emphasis added). But as the Supreme Court has explained, "[w]ith that expansion came new constraints." *Id.* Critically, "The authority to appoint 'any person or persons' as an acting officer gave way to a default rule that the 'first or sole assistant . . . shall' perform that function, with an exception allowing the President to instead fill the post with a person already serving in a PAS office." *Id.* Under the Government's view, this change was not actually a constraint.

19

It simply shifted the power to appoint "any person or persons" from the President to the Attorney General.

"Although the Vacancies Act has been 'amended several times over the subsequent decades,' it has retained the 'core structure' established by the 1868 Act." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24 (D.D.C. 2020). The current iteration of the Vacancies Act, the FVRA, follows that structure. It provides that a vacancy in an office that requires Presidential appointment and Senate confirmation (a "PAS Office") can be filled temporarily in one of three ways:

> First, absent action by the President, "the first assistant to the office of such officer [who has died, resigned, or is otherwise unable to perform the functions and duties of the office] *shall* perform the functions and duties of the office temporarily in an acting capacity," subject to certain limitations. 5 U.S.C. § 3345(a)(1) (emphasis added). Second, "the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office," again subject to certain limitations. *Id.* § 3345(a)(2). Third, "the President (and only the President) may direct an officer or employee of" the agency experiencing the vacancy "to perform the functions and duties of the vacant office," but only if that individual served in a senior position in that agency for at least 90 days "during the 365-day period preceding" the occurrence of the vacancy. *Id.* § 3345(a)(3).

*Cuccinelli*, 442 F. Supp. 3d at 24.

The Government now contends that first of these three mechanisms, the subsection 3345(a)(1) provision that the Supreme Court has described as "mandatory and self-executing," can actually be invoked at will. According to the Government,

subsection 3345(a)(1) gives the Attorney General unbridled discretion to pick a new Acting U.S. Attorney at any time the position remains vacant.

As a functional matter, that is not how a "self-executing" provision operates. Subsection 3345(a)(1) "sets out an automatic rule under which the first assistant assumes acting status upon a vacancy." *SW General*, 580 U.S. at 322 (Sotomayor, J., dissenting). An "automatic" or "self-executing" provision must have a triggering event; it is not invokable at any time while a vacancy exists. If the naming of a new First Assistant is itself a triggering event, Ms. Habba should have been displaced by Ms. Grace at the moment the latter was promoted to First Assistant in March.[11] If the President's submission of a nominee to the Senate is an alternative triggering event, the same displacement should have occurred on July 1.[12]

The resignation of an *Interim* U.S. Attorney cannot trigger subsection 3345(a)(1), as the provision is activated only by the departure of an "officer . . . whose appointment to the office is required to be made by the President, by and with the advice and consent of the Senate." 5 U.S.C. § 3345(a). That does not describe Ms. Habba; an Interim U.S. Attorney is not a PAS Officer. As the Supreme Court has explained, when a "subordinate officer is charged with the performance of the duty

---

[11] Jonah Bromwich, *A Prosecutor Took on MS-13 and Violent Crime. Trump Fired Her Anyway.*, N.Y. Times (Aug. 7, 2025), https://www.nytimes.com/2025/08/07/nyregion/desiree-grace-new-jersey-us-attorney.html.

[12] Nominations Sent to the Senate, The White House (July 1, 2025), https://www.whitehouse.gov/presidential-actions/2025/07/nominations-sent-to-the-senate-b7e7/.

of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official." *United States v. Eaton*, 169 U.S. 331, 343 (1898).  The only logical trigger, then, is the moment at which a Senate-confirmed U.S. Attorney departs from the role.  At the time the last Senate-confirmed U.S. Attorney left office, the First Assistant was Mr. Khanna, *not* Ms. Habba.[13]  And, Mr. Khanna *did* automatically assume the role of Acting U.S. Attorney under subsection 3345(a)(1).  The President simply chose to replace him. There was no subsequent triggering event.

As a practical matter, the Government's interpretation of subsection 3345(a) would mean that the FVRA affords more power to the Attorney General than the President.  Subsection 3345(a) allows the President to pick an Acting U.S. Attorney from a limited pool of government employees:

> **(2)** . . . the President (and only the President) may direct *a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate*, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or
> **(3)** . . . the President (and only the President) may direct *an officer or employee of such Executive agency* to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if—
>> **(A)** during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable

---

[13] If the president's submission of a nomination to the Senate somehow re-triggers Section 3345(a)(1)—and thus "first assistant" may also refer to the person serving as first assistant at that time—that individual was Ms. Grace.

> officer, the officer or employee served in a position in such agency
> for not less than 90 days; and
> **(B)** the rate of pay for the position described under subparagraph
> (A) is equal to or greater than the minimum rate of pay payable for
> a position at GS–15 of the General Schedule.

5 U.S.C. § 3345(a) (emphases added). Essentially, the statute provides that the President may select only a current PAS Officer or a senior employee within the relevant U.S. Attorney's Office.

Under the Government's interpretation of subsection 3345(a)(1), though, the Attorney General faces no such restriction. She can name as Acting U.S. Attorney anyone she pleases, so long as that person's nomination is not currently pending before the Senate. Whereas the President's menu is limited to Cabinet members and career officials at the relevant office, the Attorney General may pluck a friend from the private sector. Given that the President supervises the Attorney General, this would be an anomalous distribution of power. And if the reality is that the President may tell the Attorney General to select anyone *he* wants, then the constraints of subsection 3345(a)(2) and (3) are entirely meaningless. This Court cannot adopt an interpretation of Section 3345 that would "in practical effect render [statutory language] entirely superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).

Apart from the structural clues and operational concerns that counsel against the Government's proffered interpretation of Section 3345, the plain text of the

statute cannot possibly be read to afford the Attorney General greater latitude than the President. Section 3345 repeatedly emphasizes the exclusivity of the President's authority. In three separate places, the statue makes clear that "the President (and only the President)" has the authority to choose who serves as acting officer. *See* 5 U.S.C. § 3345(a)(2) ("the President (and only the President) may direct [Senate-confirmed official] to perform the functions and duties of the vacant office temporarily in an acting capacity"); *id*. § 3345(a)(3) ("the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity"); *id*. § 3345(b)(c)(1) ("the President (and only the President) may direct an officer who is nominated by the President for reappointment for an additional term to the same office without a break in service, to continue to serve in that office . . ."). This is not a statute that envisions a role for anyone else.

If the meaning of Section 3345 remained ambiguous despite this text, context, and structure, looking at the history behind the FVRA's enactment would wipe away any doubt about whether the statute empowers the Attorney General to appoint acting officers. It is undisputed that Congress enacted the FVRA for the specific purpose of sapping cabinet secretaries of their authority to choose acting officers. Even more precisely, Congress enacted the FVRA to eliminate the very maneuvering by an Attorney General that Ms. Bondi now seeks to deploy.

24

As the Supreme Court has recognized, the event that precipitated the FVRA's enactment was the Attorney General's naming of Bill Lann Lee "to serve as Acting Assistant Attorney General for the Civil Rights Division of the Justice Department, immediately after the Senate refused to confirm him for that very office." *SW General*, 580 U.S. at 295. *See* Steven J. Duffield & James C. Ho, *The Illegal Appointment of Bill Lann Lee*, 2 Tex. Rev. L. & Pol. 335 (1998); Thomas A. Berry, *S.W. General: The Court Reins in Unilateral Appointments*, Cato Sup. Ct. Rev., 2016-2017. The history of Mr. Lee's assumption of an acting officer role is remarkably similar to that of Ms. Habba:

> On January 20, 1997, the incumbent and Senate-confirmed Assistant Attorney General (Assistant AG) for Civil Rights . . . resigned. Afterwards, the Deputy Assistant AG for Civil Rights . . . was designated by the Attorney General to perform the functions and duties of the vacant, higher PAS office. . . . After 181 days passed with [the Deputy Assistant AG for Civil Rights] acting in the subject office, President Clinton nominated Bill Lann Lee for the position and sent the nomination to the Senate. *The nomination never came to a vote, and in the Republican-controlled Senate there was strong aversion to confirming Mr. Lee.* . . . In what many considered a brash act, and to the ire of many in the Senate, on December 15, 1997, President Clinton announced . . . the naming of "Bill Lann Lee to the post of Acting Assistant Attorney General for Civil Rights." The means of appointment, however, was actually made by the . . . Attorney General Janet Reno. . . . [Lee] was hired to fill the brand-new position of "Principal Deputy Assistant Attorney General." On the very same day, the Attorney General used [statutory authorities] . . . to immediately name Mr. Lee Acting Assistant Attorney General for Civil Rights. After his hire as a "Principal Deputy," . . . Mr. Lee would serve as Assistant AG for Civil Rights, in an acting capacity, until he was recess appointed to the same position on August 4, 2000.

Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS* at 12–13 (Sept. 9, 2019), https://ssrn.com/abstract=3450843 (internal citations omitted). In response to Lee's assumption of an acting role, Senator Strom Thurmond wrote to the Attorney General that if she claimed the authority to appoint Lee to his acting position, Thurmond would "feel compelled to propose legislation that I hope will make the requirements of the Vacancies Act undeniably clear." *See* Letter from Senator Thurmond, to Att'y Gen. Janet Reno, at 2 (Jan. 23, 1998), https://babel.hathitrust.org/cgi/pt?id=uc1.b5142566&seq=131. That legislation was the FVRA. "Bill Lan Lee was the straw that broke Congress' patience with suspect practices skirting the Vacancies Act . . . . It was the main impetus that caused Congress to enact the FVRA." Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS.*

Like Mr. Lee, Ms. Habba was named by the Attorney General "to serve as Acting [officer], immediately after the Senate refused to confirm [her] for that very office." *SW General*, 580 U.S. at 295. In essence, the Attorney General now claims the precise power that the FVRA was enacted to prevent her from exercising. That cannot be the correct reading of the statute. "Courts should remember that "[l]egislation has an aim; it seeks to obviate some mischief." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 538–39 (1947). *See* Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967, 968 (2021) ("The

mischief rule instructs an interpreter to consider the problem to which the statute was addressed, and also the way in which the statute is a remedy for that problem. ... [T]he generating problem is taken as part of the context for reading the statute."). As Justice Story explained nearly two centuries ago, "[E]very statute is to be expounded reasonably, so as to suppress, and not to extend, the mischief which it was designed to cure." *Sherwood v. Sutton*, 21 F. Cas. 1303, 1307 (C.C.D.N.H. 1828).

### b. Regardless of When Subsection 3345(A)(1) was Triggered, Ms. Habba Has Never Been—And Never Will Be—a "First Assistant" U.S. Attorney

Even if subsection 3345(a)(1) applied to individuals appointed to the position of "first assistant" at any time after the vacancy arose, Ms. Habba was never "first assistant" within the meaning of subsection 3345(a)(1) because she "never did and never will serve in a subordinate role." *Cuccinelli*, 442 F. Supp. 3d at 24. Because the FVRA does not provide a statutory definition of the phrase "first assistant," *see* Federal Vacancies Reform Act of 1998, S. Rep. No. 105-250 at 12 (Jul. 15, 1998), the Court must construe that phrase "in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). As the U.S. District Court for the District of Columbia explained:

> [T]he word "assistant," . . . under any plausible construction comprehends a role that is, in some manner and at some time, subordinate to the principal. An "assistant" is "one who acts as a subordinate to another or as an official in a subordinate capacity." *Assistant*, Webster's Third New

27

> International Dictionary at 132 (1993). A "first assistant," in turn, is the senior or principal assistant to the official or office at issue—in other words, the assistant who is "foremost in rank" or the "chief" assistant. *First*, Webster's Third New International Dictionary at 856 (1993). Thus, although the "first assistant" holds a rank senior to other "assistants," he remains an "assistant" to the principal. Under that commonsense understanding of the meaning of the default provision, [the purported acting director] does not qualify as a "first assistant" because he was assigned the role of principal on day-one and, by design, he never has served and never will serve "in a subordinate capacity" to any other official at [the office].

*Cuccinelli*, 442 F. Supp. 3d at 25–26.

Here, the Government has expressly stated in its briefing that "the President has made clear that he will not permit anyone other than Ms. Habba to fill the current vacancy in the office of the United States Attorney on a temporary basis." *United States v. Giraud III et al.*, No. 1:24-cr-00768-MWB, ECF 108 ("*Giraud*, Govt Opp. Br.") at 21–22. Thus, "by design, [she] never has served and never will serve 'in a subordinate capacity' to any other official at [the office]." *Cuccinelli*, 442 F. Supp. 3d at 26. Though the Attorney General may have named Ms. Habba as "first assistant," "labels—without any substance—cannot satisfy the FVRA's default rule under any plausible reading of the statute." *Id.*

### 3. Ms. Habba Cannot Serve as Acting U.S. Attorney Because the Submission of Her Nomination to the Senate Rendered Her Ineligible Under Subsection 3345(b)(1)

Even if Ms. Habba were the "first assistant" within the meaning of subsection 3345(a)(1), which she is not, another provision of the same statute, subsection

3345(b)(1), expressly bars her from serving as Acting U.S. Attorney. As the Supreme Court has explained, "Once the President *submitted* [her] nomination to fill that position in a permanent capacity, subsection (b)(1) prohibited [her] from continuing [her] acting service" under subsection (a)(1). *SW General*, 580 U.S. at 309.

The Government's entire argument to the contrary rests on a misunderstanding of why Congress used a particular tense. Subsection 3345(b)(1) provides that:

> **(1)** Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if—
>> **(A)** during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person
>>> (ii)    did not serve in the position of first assistant to the office of such officer; or
>>> (ii)    served in the position of first assistant to the office of such officer for less than 90 days; and
>> **(B)** the President **submits** a nomination of such person to the Senate for appointment to such office.

5 U.S.C. § 3345(b)(1) (emphasis added). According to the Government, the critical question is the timing of the submission. The Government relies on *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003), for the proposition that "a statutory provision expressed in the present tense requires consideration of status at the time of the [relevant] action, not before." *Giraud*, Govt Opp. Br. at 12–13 (internal quotation marks omitted). The Government argues that Ms. Habba is not subject to

29

subsection 3345(b)(1)'s bar because her nomination was submitted before, not after, her assumption of the Acting U.S. Attorney role under Section 3345(a)(1).

The Government's textual argument is wrong for multiple reasons. First, because subsection 3345(a)(1) refers to the person serving as "first assistant" *at the time of the last Senate-confirmed official's departure*, it would have been impossible for the President to have "submitted" that person's nomination before subsection 3345(a)(1) was triggered. The President does not submit a nomination before a vacancy arises, so using the word "submitted" would have made little sense in this context. Second, if the relevant question is the tense of "submit"—*i.e.*, whether the act of submission pre-dated or post-dated Ms. Habba's assumption of her role as Acting U.S. Attorney under Section 3345—the act of *withdrawing* a nomination would be irrelevant. Under the Government's theory of the text and text alone, the President did not actually need to withdraw Ms. Habba's nomination. It was *submitted* before her purported assumption of the Acting U.S. Attorney position pursuant to subsection 3345(a)(1), regardless of if or when it was withdrawn.

The Government likely recognizes the contradictions of its textual theory, so it combines its emphasis on the word "submits" with an emphasis on FVRA's supposed "purpose." *Giraud*, Govt Opp. Br. at 12. Through this mash-up, the Government concludes that the relevant consideration under subsection (b)(1) is whether a nomination is *pending*. To begin with, the word "pending," like the word

"withdraw," is nowhere in the text of Section 3345. But setting aside the textual implausibility the Government's argument, looking to the "purpose" of the FVRA wholly discredits this theory rather than bolstering it. In the Government's view, "[t]he purpose of subsection (b)(1) is to prevent the President from circumventing the Senate's advice-and-consent function by installing a pending nominee for an office on an acting basis *before the Senate can act* on the nomination." *Giraud*, Govt Opp. Br. at 12 (emphasis added). The Government does not explain how it discerned this purpose, but the history behind the FVRA's enactment squarely refutes the Government's theory. As explained in greater detail above, the offense that gave rise to the FRVA was the instillation of Bill Lann Lee on an acting basis *after the Senate had the opportunity to act* on his nomination but chose not to. The purpose of the FVRA was to close the precise loophole that Ms. Habba now argues it opened.

The Government's interpretation of subsection 3345(b) has been roundly rejected by members of Congress in the past. In a 2023 letter to President Biden, thirteen members of the Senate Committee on Commerce, Science, and Transportation—including then-Senator J.D. Vance—informed the President that the acting administrator of NHTSA was prohibited from serving in that role under subsection 3345(b)(1) because the President had *previously submitted* her nomination to the Senate. *See* Letter from Members of the U.S. Senate Comm. on Com., Sci., & Transp. to President Joseph R. Biden, Jr. (Sept. 20, 2023),

https://www.commerce.senate.gov/services/files/    796C3233-2110-4A65-ADA3-4CFA39FDE167.

Like Ms. Habba, that individual's nomination was withdrawn after it stalled, and she was subsequently appointed as acting administrator under the pretense of Section 3345 authority. As the Senators' letter to President Biden explained, "You cannot appoint [her] as acting administrator under the [FVRA] because . . . [you] previously submitted her nomination . . . to the Senate. Therefore, she cannot lawfully serve as acting administrator" under subsection 3345(b)(1). *Id.* The remedy prescribed in that letter applies with equal force to Ms. Habba: "To comply with the law, [the President] should immediately correct [his] violation of the law by removing [her] from her so-called acting [] position." *Id.*

## III. THE "SPECIAL ATTORNEY" POSITION CANNOT BE USED TO CIRCUMVENT THE VACANCY APPARATUS TO APPOINT AN ONGOING U.S. ATTORNEY

Perhaps recognizing the problem the President and she created, Attorney General Bondi then devised a "Rube Goldberg" contraption to try to effect the appointment of Ms. Habba as U.S. Attorney, circumventing the congressionally mandated appointment scheme and the Senate's advice and consent role. Citing 28 U.S.C. § 515, Attorney General Bondi's delegation attempted to grant Ms. Habba the full powers of the U.S. Attorney for the District of New Jersey. *See* July 24, 2025 Letter from J. Campos to A. Habba (*United States v. Giraud III et al.*, No. 1:24-cr-

00768-MWB, ECF 108-5 at 1) ("You are hereby appointed as a Special Attorney to the United States Attorney General pursuant to 28 U.S.C. § 515. . . . [Y]ou are authorized to conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct."). This attempt to use the "special attorney" designation to effectively and indefinitely install Ms. Habba, in everything but title, as U.S. Attorney for the District of New Jersey is not a permissible use of that statute.

28 U.S.C. § 515 states:

**(a)** The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

A general statute allowing the Attorney General to appoint *special* attorneys for specific purposes cannot serve as an alternative method to appoint an *indefinite* U.S. Attorney; a position whose appointment is already governed by a specific statutory appointment scheme. *See* 28 U.S.C. § 541(a) ("The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.").  The statute's language is clear—U.S. Attorneys are appointed by the President and confirmed by the Senate.

33

In *United States v. Crosthwaite*, 168 U.S. 375 (1897), the Supreme Court held that absent a specific congressional grant of power, the Attorney General does not have the authority to appoint his or her own set of special attorneys to duplicate the duly appointed U.S. Attorneys authorized by Congress. *Id.* at 379–89. The Government's position now violates that holding—the Attorney General has the power to appoint her own set of special attorneys functioning as U.S. Attorneys, removing the need for Congress to authorize U.S. Attorneys at all.

Because Attorney General Bondi appointed Ms. Habba to serve as special attorney and simultaneously designated her as First Assistant in the Office with the purported authority to serve as Acting U.S. Attorney, it is unclear what legal authority she is now claiming to operate under. This ambiguity cannot be used to avoid clear statutory requirements for U.S. Attorneys. Further, Section 3347 explains that "Sections 3345 and 3346 are the *exclusive* means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . unless a statutory provision *expressly* authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(1)(A). Section 515 provides no such authorization.

## IV.  MS. HABBA IS CURRENTLY ACTING WITHOUT LEGAL AUTHORITY, NECESSITATING DISMISSAL OF THE INDICTMENT

### 1.  Ms. Habba is Acting Without Authority

Ms. Habba is currently without any legal authority to perform the functions and duties of U.S. Attorney.  She is not properly occupying the position of U.S. Attorney, Interim U.S. Attorney, Acting U.S. Attorney, First Assistant U.S. Attorney, or "special attorney."  As summarized here, none the purported authorities that would grant Ms. Habba legitimate U.S. Attorney power are satisfied or cured under either statutory provision:

| Authority | Defect |
|---|---|
| Not U.S. Attorney | No Senate confirmation |
| Not Interim U.S. Attorney | Interim appointment expired |
| Not Acting U.S. Attorney | Cannot rely on 5 U.S.C. § 3345 after authority lapses under 28 U.S.C. § 546 |
| Not First Assistant | Not in a subordinate role when the vacancy arose |
| Not "Special Attorney" | Cannot use 28 U.S.C. § 515 to circumvent statutory requirements for U.S. Attorney confirmation |

As explained *supra*, Ms. Habba's interim appointment had expired at the time she brought this indictment.  Now, she is operating under an [improper] Acting U.S. Attorney designation and special attorney appointment.  Because Ms. Habba continues to operate under no legal authority, her actions are *ultra vires*.

### 2.  The Indictment Must Be Dismissed

Because the indictment was signed by Ms. Habba after her interim appointment had expired and she had no other legal authority, thus prejudicing Mr. Pina, it should be dismissed.  Section 3348 of the FVRA provides that:

**(1)** An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply *shall have no force or effect.*

**(2)** An action that has no force or effect under paragraph (1) may not be ratified.

5 U.S.C. § 3348(d) (emphasis added). Further, Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment "be signed by an attorney for the government." *See, e.g.*, *In re Mayer*, 2006 WL 20526, at *3 (D.N.J. Jan. 4, 2006) ("Indictments, by definition, require the signature of an attorney for the government."). An "attorney for the government" is "the Attorney General or an authorized assistant," "a United States attorney or authorized assistant," "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). At the time of the indictment, Ms. Habba's interim appointment had expired, and she held none of the other statutorily-enumerated positions. This fatal defect in this indictment cannot be cured to prevent prejudice to Mr. Pina. Additionally, the unknown role of Ms. Habba in the preparation and presentation of evidence presented to the grand jury further necessitates dismissal.

Where a federal prosecutor lacks the proper authority to act, including to obtain a grand jury indictment, it is routine for courts to dismiss the indictment. *See, e.g.*, *United States v. Williams*, 65 F.R.D. 422, 448 (W.D. Mo. 1974) (dismissing indictment with prejudice where the government failed to comply with orders

36

demonstrating that two DOJ Special Attorneys had the authority to act in the district); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Oh. 1928) (setting aside indictment because a Special Assistant to the Attorney General who had been authorized to prosecute in certain federal district courts was not authorized to go before the grand jury and obtain an indictment in that district); *United States v. Rosenthal*, 121 F. 862, 873 (C.C.S.D.N.Y. 1903) (dismissing indictment because a special assistant to the Attorney General was appointed only to investigate the case but exceeded his authority and became an "unauthorized prosecutor" by seeking a grand jury indictment). As the Circuit Court aptly stated in *Rosenthal*, "[t]here is vice in the vicissitude itself whereby the unauthorized prosecutor virtually supersedes the authorized prosecutor." 121 F. 862, 873. Here, by continuing to occupy the office of U.S. Attorney, Ms. Habba has unlawfully usurped the power of the authorized prosecutor in New Jersey.

### 3. Should This Case Be Re-Presented to a Grand Jury, Ms. Habba Cannot Supervise or Be Involved in Its Presentation or Subsequent Prosecution

Should this Court dismiss the current indictment, and the Government under the authority of a proper leader chooses to seek reindictment of Mr. Pina before a grand jury in New Jersey, Ms. Habba must be barred from supervising or being involved in any such grand jury presentation or subsequent prosecution. In such a case, the prejudice that warranted dismissal of the first indictment would simply

transfer to the second indictment, as the underlying improper conduct—Ms. Habba acting without legal authority—would still exist.

## CONCLUSION

For the foregoing reasons, Mr. Pina respectfully requests that this Court dismiss the indictment against him.


Dated: August 11, 2025                     Respectfully Submitted,


*/s/ Gerald Krovatin*                              */s/ Abbe David Lowell*
Gerald Krovatin, Esq.                          Abbe David Lowell, Esq.
KROVATIN NAU LLC                            David A. Kolansky, Esq.
60 Park Place, Suite 1100                      Isabella M. Oishi, Esq.
Newark, NJ  07102                             John P. Bolen, Esq.
T: (973) 424-9777                              LOWELL & ASSOCIATES, PLLC
F: (973) 424-9779                              1250 H Street, N.W., Suite 250
gkrovatin@krovatin.com                      Washington, DC 20005
                                               T: (202) 964-6110
*/s/ Norman L. Eisen*                           F: (202) 964-6116
Norman L. Eisen, Esq.                         ALowellpublicoutreach@lowellandassociates.com
Joshua Kolb, Esq.                             DKolansky@lowellandassociates.com
DEMOCRACY DEFENDERS FUND              IOishi@lowellandassociates.com
600 Pennsylvania Avenue S.E.                JBolen@lowellandassociates.com
Suite 15180
Washington, DC 20003
T: (202) 594-9958
norman@statedemocracydefenders.org
joshua@statedemocracydefenders.org