UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 25-436 (MCA) |
| v. | : | |
| | : | |
| CESAR HUMBERTO PINA | : | |
| | : | |

# MR. PINA'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT AND TO ENJOIN ALINA HABBA FROM SUPERVISING HIS PROSECUTION[1]

---

[1] Mr. Pina files this supplemental brief pursuant to the August 15, 2025 Order (ECF 62) by the Honorable Matthew W. Brann of the United States District Court for the Middle District of Pennsylvania, permitting the parties to optionally submit supplemental briefs of no more than 15 pages before 5:00 p.m. on August 18, 2025.

Mr. Pina, by and through his counsel, submits this additional Supplemental Brief to respond to a few issues raised at the August 15, 2025, hearing. (ECF 63.)

At the August 15, 2025, hearing, the Government indicated that the issue of Ms. Habba's appointment is before this Court because "the District Court [Judges of New Jersey] precipitated this constitutional confrontation that did not need to happen." (8/15/25 Tr. at 155:3–5.) It is not the judges who caused this crisis. This issue is actually before the Court because the President, through his Attorney General, has attempted to side-step the statutorily required "advice and consent" process in order to get an unsuccessful nominee appointed as the U.S. Attorney for the District of New Jersey. The Administration—not the District Court Judges—has defied the statutory framework that Congress set out in 5 U.S.C. § 3345 and 28 U.S.C. § 546.

### I. THE GOVERNMENT IS INCORRECT THAT MR. PINA'S READING OF THE FVRA WOULD AMOUNT TO A PERMANENT BAN FOR MS. HABBA.

The Government suggested at the hearing that Mr. Pina's reading of subsection 3345(b)(1)(B) of the FVRA would amount to the "broad sanction" of a "lifetime ban" for Ms. Habba. (8/15/25 Tr. at 17:12–16.) But subsection 3345(b)(1)(B) imposes no such "continuing disability." (*Id.* at 18:12–13.)

To state the obvious, Ms. Habba is not "banned" from serving as U.S. Attorney. She may assume that position at any moment if she is nominated again by

1

the President and confirmed by the Senate. *See* 28 U.S.C. § 541. Ms. Habba already served as Interim U.S. Attorney while her nomination was pending, which Section 546 allows, but her service cannot continue forever in that role without Senate confirmation. Because Ms. Habba was not the First Assistant for at least 90 days before the U.S. Attorney position became vacant, the FVRA plainly provides that she cannot serve as Acting U.S. Attorney after being nominated to fill that position. *See* 5 U.S.C § 3345(b)(1)(ii).

The Government argues that Ms. Habba is not subject to subsection 3345(b)(1)'s bar because her nomination was submitted before, not after, her purported assumption of the Acting U.S. Attorney role under Section 3345(a)(1). As the Government made clear at the hearing, its interpretation of subsection 3345(b)(1) rests entirely on the fact that "the *submit* language is in the present tense." (8/15/25 Tr. at 16:17) (emphasis added). The Government advanced the same textual argument in its briefs, in which it relied on *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003), for the proposition that "a statutory provision expressed in the present tense requires consideration of status at the time of the [relevant] action, not before." *Giraud*, Gov't Opp. Br. at 12–13 (internal quotation marks omitted). The Government's textual argument is wrong for multiple reasons. First, because subsection 3345(a)(1) refers to the person serving as "first assistant" at the time of the last Senate-confirmed official's departure, it would have been impossible for the

2

President to have "submitted" that person's nomination before subsection 3345(a)(1) was triggered. The President does not submit a nomination before a vacancy arises, so using the word "submitted" would have made little sense in this context. Second, if the critical question is the tense of "submit"—*i.e.*, whether the act of submission pre-dated or post-dated Ms. Habba's assumption of her role as Acting U.S. Attorney under Section 3345—the act of withdrawing a nomination would be irrelevant. Under the Government's theory of the text and text alone, the President did not actually need to withdraw Ms. Habba's nomination. It was submitted before her purported assumption of the Acting U.S. Attorney position pursuant to subsection 3345(a)(1), regardless of if or when it was withdrawn. Further, the legislative history behind the FVRA's enactment reveals that Congress's precise purpose was to prevent the Attorney General from naming someone as an acting officer after their nomination for that office stalled in the Senate and was withdrawn.

The Government mischaracterizes subsection 3345(b)(1)'s modest restriction as a "lifetime ban" for Ms. Habba, but what the Government really seeks is a lifetime pass that would allow Ms. Habba to skip the "advice and consent" process. *See* 28 U.S.C. § 541. It asks this Court to allow Ms. Habba to perform the role of U.S. Attorney indefinitely, without ever obtaining Senate confirmation. No one is trying to "ban" a particular person from serving; Mr. Pina is simply asking that the

3

Executive be confined by the statutorily prescribed processes and time limits for filling a vacant U.S. Attorney position.

### II. MR. PINA DOES NOT ARGUE THAT SECTION 546 IS EXCLUSIVE.

At the hearing, the Court pointed to legislative history undermining any argument that Section 546 is exclusive. As the Court indicated, when Congress revised Section 546 after the PATRIOT Act, it considered including a provision that would have made Section 546 "the exclusive means for appointing a person to temporarily perform the functions of a United States Attorney for a District in which the Office of the United States Attorney is vacant." (8/15/25 Tr. at 49:25–50:1-6.) But critically, Congress ultimately elected *not* to include that provision—as the Court also noted.

Mr. Pina concurs with the Government that Section 546 is *not* the exclusive means for appointing a person to temporarily perform the functions of U.S. Attorney. (*Id.* at 36:18–22.) Though Mr. Pina maintains that Section 546 is the more *specific* statute than the FVRA, he does not assert—and has never asserted—that Section 546 is the *exclusive* means. Mr. Pina fully agrees that "the President is permitted to elect *between* two statutory alternatives." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) (emphasis added). That is exactly what the President did here. The President initially relied on the FVRA's default mechanism, Section 3345(a)(1), to allow Acting U.S. Attorney Vikas Khanna to continue serving

4

in that role for the first six weeks of his term.[2] The President then chose to override that statutory default—as was his prerogative—by invoking Section 546 on March 3, 2025, and appointing (through the Attorney General) John Giordano as Interim U.S. Attorney. Mr. Pina does not dispute that the FVRA and Section 546 may complement each other in this way.

The narrow argument Mr. Pina advances is that the automatic mechanism of subsection 3345(a)(1) does not kick in for a *second* time when a Section 546 appointment ends. This reading, which is entirely consistent with both *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, and *English v. Trump*, 279 F. Supp. 3d 307, 320 (D.D.C. 2018), is firmly rooted in the text of the FVRA itself. Subsection 3345(a)(1) is triggered only by the departure of a PAS officer. Because Ms. Habba was never a PAS officer, the end of her tenure as Interim U.S. Attorney did not create a new vacancy; it merely marked the continuation of the vacancy created by Philip Sellinger's departure. Subsection 3345(a)(1) does not reemerge multiple times throughout the same vacancy to spring different "first assistants" into acting service. It is the Government's position that the FVRA may displace Section

---

[2] The President also had the power, pursuant to his authority under Section 3345(a)(2) or (a)(3), to install someone *besides* Mr. Khanna for 300 days, and at the end of that period, he could have invoked Section 546 to appoint someone else for another 120 days.

546; Mr. Pina's position is that the statutes operate harmoniously and that Section 546 continues to control once it has been invoked.

### III. THE ATTORNEY GENERAL CANNOT INSTALL A FIRST ASSISTANT AFTER THE VACANCY HAS BEEN CREATED TO SERVE AS ACTING US ATTORNEY UNDER SECTION 3345, AND SECTION 515 DOES NOT CURE THE PROBLEM.

Under no statutory framework was Ms. Habba a proper First Assistant at the time the vacancy arose. The Government asserts Ms. Habba is the Acting U.S. Attorney by virtue of her designation as First Assistant under Section 3345(a)(1). (8/15/25 Tr. at 54:11–15). Further, the Government expands the scope of her authority by invoking Section 515 to designate her a "Special Attorney," suggesting this gives the Attorney General unfettered power to delegate to Ms. Habba supervisory authority over the Office. (*Id.* at 83:6–8, "MR. WHITAKER: Well the effect of appointing a Special Attorney and designating her First Assistant was to appoint her as the First Assistant.").

The Government's position has several flaws. *First*, Section 3345(a) does not create a mechanism for an outsider like Ms. Habba to be appointed First Assistant in the first place. The Government's reading of Section 3345 would give the Attorney General more power than the President, rendering the limitations of subsection 3345(a)(2) and (a)(3) mere surplusage. Under the Government's reading, the Attorney General could use the "first assistant" mechanism to install as Acting U.S.

Attorney anyone she pleases. But at the same time, the President would be unable to appoint that same person.

The Government's first response to this irreconcilable outcome is that "the Attorney General's appointment authority is subject to the President's direction. So there really isn't daylight in this instance between [] what the President wants and what the Attorney General wants. Because, of course, the President is the Attorney General's boss." (8/15/25 Tr. at 68:8–13.) The Government advances this argument despite the text of Section 3345 itself granting "the President (and only the President)" distinct authority to appoint Acting U.S. Attorneys and conferring distinct limitations on who the President many appoint. 5 U.S.C. §§ 3345(a)(2), (3).[3]

*Second*, the Government falls back on using Section 515 to delegate to Ms. Habba, as a Special Attorney, the authority to "conduct any kind of legal proceeding, including proceedings that United States Attorneys could conduct." (8/15/25 Tr. at 95:2–6.) But Section 515, as with Section 3345, is *not* itself a vehicle to install or appoint someone as First Assistant and then the Acting. As such, neither can Ms. Habba become the Acting U.S. Attorney under Section 515.

---

[3] When the Attorney General and the President were confronted with the desire to appoint Ms. Habba to the Acting role, they must have realized that they did not have a Section 3345(a) means to do so, which is why, at that point, the President invoked the Section 546 procedure. Once the President (through the Attorney General) did that, it triggers that statute's procedures, including the District Court's appointment authority under Section 546(d). (*See* 8/15/25 Tr. at 46:1–14.)

Because Ms. Habba is neither a proper Acting U.S. Attorney under 5 U.S.C. § 3345 (as she was not the First Assistant at the time the vacancy first arose), nor is she still the Interim U.S. Attorney under 28 U.S.C. § 546 (as her 120 days have expired), nor does 28 U.S.C. § 515 provide the Attorney General with authority to make her First Assistant or Acting U.S. Attorney, Ms. Habba's purported appointment falls outside the bounds of all statutory authority to be the Acting U.S. Attorney for the District of New Jersey.

**CONCLUSION**

For the foregoing reasons, Mr. Pina respectfully requests that this Court grant his Motion to Dismiss the Indictment and enjoin Ms. Habba from supervising his case.

Dated: August 18, 2025                     Respectfully Submitted,

/s/ *Gerald Krovatin*                      /s/ *Abbe David Lowell*
Gerald Krovatin, Esq.                      Abbe David Lowell, Esq.
KROVATIN NAU LLC                           David A. Kolansky, Esq.
60 Park Place, Suite 1100                  Isabella M. Oishi, Esq.
Newark, NJ 07102                           John P. Bolen, Esq.
T: (973) 424-9777                          LOWELL & ASSOCIATES, PLLC
F: (973) 424-9779                          1250 H Street, N.W., Suite 250
gkrovatin@krovatin.com                     Washington, DC 20005
                                           T: (202) 964-6110
/s/ *Norman L. Eisen*                      F: (202) 964-6116
Norman L. Eisen, Esq.                      ALowellpublicoutreach@lowellandassociates.com
Joshua Kolb, Esq.                          DKolansky@lowellandassociates.com
DEMOCRACY DEFENDERS FUND                   IOishi@lowellandassociates.com
600 Pennsylvania Avenue S.E.               JBolen@lowellandassociates.com
Suite 15180
Washington, DC 20003
T: (202) 594-9958
norman@statedemocracydefenders.org
joshua@statedemocracydefenders.org

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2025, a copy of the foregoing was served electronically on all counsels of record.

*/s/ Gerald Krovatin*
Gerald Krovatin, Esq.
